UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                        Plaintiff,                        Court File No. 16-cr-160 (MJD/LIB)

      v.

                                          **REPORT AND RECOMMENDATION**

Simon Peter Kilman.

                        Defendant.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, and upon Defendant's Motion to Suppress Fruits of Unlawful Search and Seizure, [Docket No. 22]. The Court held a motions hearing on August 15, 2016, regarding the parties' pretrial motions.[1]

At the motions hearing, the parties requested the opportunity to submit supplemental briefing, which was completed on August 30, 2016, and Defendant's Motion to Suppress, [Docket No. 22], was taken under advisement by the undersigned at that time. For the reasons set forth below, the Court recommends that Defendants' Motion to Suppress Fruits of Unlawful Search and Seizure, [Docket No. 22], be **DENIED**.

## I.    RELEVANT FACTS[2]

---

[1] The Court addressed the parties' pretrial discovery motions by separate order. ([Docket No. 29]).

[2] Because the Court is considering a challenge to an affidavit supporting a search warrant, only the information found within the four corners of the affidavit is considered. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) ("'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."'") (citations omitted).

The record presently before the Court indicates that at a First Witness interview on November 20, 2015, B.C., a 3-year-old girl, disclosed sexual contact by Defendant. (Search Warrant and Affidavit, [Docket 26-1], 3). B.C.'s parents, M.C. and R.C., told Investigator Jessica LaBore of the St. Louis County Sheriff's Office that Simon Peter Kilman ("Defendant") was a family friend who had lived in their garage since April 2015. Defendant mainly stayed in the garage, which had been converted into a heated bedroom, but he used the main house's kitchen and bathroom facilities. R.C. heard Defendant enter the house around 2 a.m. almost every night to use the bathroom. (Id. at 3, 6).

On November 13, 2015, R.C. found B.C.'s diaper was on inside out. He called M.C. at work; M.C. said she had not put B.C.'s diaper on inside out, and told R.C. to ask B.C. if someone had touched her. When asked, B.C. said Defendant had; she said she was dreaming and woke up and Defendant was touching her. When R.C. asked where Defendant had touched her, B.C. pointed toward her vagina. (Id. at 3).

After work, M.C. bought a small infrared day/night camera with a motion detector that linked to an app on R.C. and M.C.'s phones. When the camera sensed motion, it sent an alert to their phones, began recording, and recorded for 45 seconds. (Id.).

At 2:00 or 2:30 a.m. on November 18, 2015, the camera alert sounded and R.C. and M.C. saw that the camera was recording Defendant crawling on the floor toward B.C.'s bed. R.C. and M.C. told Investigator LaBore that they believed Defendant heard the alarms on their phones because the alarms are loud and their bedroom is close to B.C.'s room. Defendant stood up and went out of view of the camera, but stayed in the room. (Id.).

Defendant activated the camera again as he seemed to be checking on another child, J.C., who was in the top bunk of a bunk bed in the room. When M.C. turned on the light in B.C.'s

room, Defendant put his arms up and said he was just checking on J.C. (Id.). R.C., M.C., and Defendant went out to the garage; R.C. told Defendant to leave and Defendant took some of his belongings and left. (Id.).

R.C. and M.C. had previously purchased a white Galaxy S3 cell phone for Defendant and put him on their cell phone plan. (Id. at 4). After Defendant left the home, Defendant sent the following texts to R.C. and/or M.C.:

1. "Are the police going to want to talk to me?"
2. "I will not come anywhere near you."
3. "I have struggled with this since my childhood and after last night I cannot abide it any longer. It's either the light or suicide."
4. "Will the police be contacting me? If they do I want to get my stuff into storage and come back and just turn myself in. If you wish to press charges I fully understand. I just want to get things wrapped up before I go to jail."
5. "I don't even know what to say about hurting you this way. Any apology I offer would be worthless. But I can assure you that I will turn to the Light. The last couple of weeks the enemy has been coming against me with a fury I have never seen before."
6. "And now being aware of what I have done I have to yield to the Light. There is no other option."
7. "Just to let you know, I contacted an independent counseling center near where I will be living. I am going in Monday for an assessment so I can get help."
8. "I will have a new phone day after tomorrow."

(Id.).

A medical exam after the interview revealed that B.C. had "complained of her pee-pee hurting since [November 13, 2015]" and that B.C.'s hymen was "'[s]emi-lunar with scant erythema'" and a "'midline notch nearly at base at 6 o'clock with small fold to the patient['s] left.'" (Id.). When Investigator LaBore spoke with the examining doctor, she stated that the notch was suspicious because of its location and that "[i]t would be consistent with an injury from a finger going inside or from pulling apart or stretching the area too widely." The Perihymenal portion of the examination also showed scant erythema. (Id.). Overall, the examining doctor said

that her findings were consistent with B.C.'s report that Defendant had taken off her diaper and touched her. (Id.).

Police arrested Defendant on November 20, 2015, and seized his cell phone as evidence. Defendant was Mirandized and agreed to speak to police, whom he told that he had used his thumbs to "'spread the labia'" and had put his mouth on B.C.'s vagina. (Id. at 4-5).

On December 10, 2015, Investigator LaBore applied for a search warrant to:

> conduct an in-depth forensic exam of any and all data related to the crime of Criminal Sexual Conduct contained within the seized cellular phone, SIM card or contained media card, PDA or electronic device to include, but not limited to, call logs, contacts, text messages, multimedia messages, audio messages, images, videos, Internet cache, deleted data as well as any information corroborating or refuting statements made by individuals involved in the investigation. The forensic exam will be conducted by a computer and cell phone forensics examiner of the affiant's choice and location.

(Id. at 2). The application described the property in question as a "White Galaxy S3 phone belonging to Simon Peter Kilman [redacted] and having the phone number of [redacted] along with all contained SIM cards and media cards." (Id.).

In addition to the facts related above, the affidavit in support of the search warrant application stated that Investigator LaBore had consulted with Investigator Eric Sathers about forensic technology investigations. Investigator Sathers, who had been with the St. Louis Country Sheriff's Office for over 10 years and had received specialized training related to computer and cell phone forensics and investigating internet crimes against children, advised Investigator LaBore that significant evidence can be recovered from cell phones, SIM cards, and removable media cards. (Id. at 5). The affidavit in support of the application for the search warrant stated:

> That evidence can include but is not limited to call logs, messages, installed applications, images, videos, location data, documents, etc. . . . This digital evidence can relate to a variety of crimes, including theft and burglary. This

digital evidence can assist in identifying a specific user of a digital item, link specific individuals to a crime as well as assist in corroborating or refuting statements made by individuals involved in the investigation.

(Id.). Investigator LaBore applied for a search warrant "on the above Galaxy S3 phone belonging to Kilman to check for the above referenced text messages and to ensure that there are not any photographs or video of BC or any other children that are either unclothed or partially unclothed." (Id.).

District Court Judge Shaun Floerke issued a search warrant to conduct the search as requested in the application. (Id. at 7). The Government subsequently indicted Defendant on one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). (Indictment, [Docket No. 1]).

## II.   DEFENDANT'S MOTION TO SUPPRESS [Docket No. 22]

Defendant moves the Court for an order suppressing any physical and digital evidence obtained as a result of the seizure and subsequent forensic analysis of the Samsung cell phone, alleging that the search violated the protections of the Fourth Amendment to the United States Constitution. ([Docket No. 22], 1).

### A.  Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation

omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley).

In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the issuing court] had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B.  Analysis**

In his Memorandum of Law in Support of Motion to Suppress, ([Docket No. 31]), Defendant argues that "the lack of particularity in the warrant affidavit and resulting unlawfully broad scope of the warrant-authorized search, (*i.e.,* 'any and all data'), far exceed[ed] the probable-cause showing offered by police." (Def.'s Mem., [Docket No. 31], 4). Although Defendant characterizes his challenge as, at least in part, a challenge to the particularity of the affidavit, it is more accurately a challenge to the breadth of the search sought and executed. Regarding particularity, warrants must "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. Amend. IV. Particularity is required to prevent "a general exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). Here, the affidavit and subsequent warrant described the cell phone data to be searched for "the above referenced text messages" and "photographs or video of [B.C.] or any other children that are either unclothed or partially unclothed" with sufficient particularity. Defendant's objection is that there was not probable cause to justify the scope or the objective of the search.

Defendant argues that the application failed to provide probable cause to search because the only information in the affidavit that linked the cell phone to contraband or evidence of criminal activity was the text messages from Defendant to M.C. and/or R.C. (Id. at 8). At most, according to Defendant, the affidavit contained probable cause sufficient only to search the text message application of the phone. (Id. at 10). He argues that the four corners of the affidavit did not contain anything to support probable cause that there were photographs or video of unclothed or partially unclothed children and so permitting a search of the entirety of the data in the cell phone was overly broad in violation of the Fourth Amendment. (Id. at 11).

The Government responds that the affidavit detailed B.C.'s report of a sexual assault and the subsequent incriminating text messages sent from Defendant's cell phone, which establish probable cause that evidence of the crime of Criminal Sexual Conduct would be found on the phone. (Response to Def.'s Mem., [Docket No. 32], 7). The Government argues that the warrant did not need to be limited to the text message application because exploration of additional information on the cell phone, such as evidence showing that Defendant was the person who sent the text messages, could be found in other areas of the phone. (Id. at 8-9).

In Riley v. California, 134 S. Ct. 2473, 2485 (2014), the United States Supreme Court addressed the permissibility of warrantless searches of data on cell phones incident to a lawful arrest, ultimately holding "that officers must generally secure a warrant before conducting such a search." In doing so, the Court noted that "[c]ell phones differ in both a quantitative and qualitative sense from other objects that might be kept on an arrestee's person," in part because of their immense storage capacity. 134 S. Ct. at 2489-91. Because Riley addressed *warrantless* searches of cell phone data, it is not controlling here, where officers obtained a search warrant prior to searching Defendant's cell phone.

Defendant analogizes the current case to United States v. Winn, 79 F. Supp. 3d 904 (S.D. Ill. 2015). (Def.'s Mem., [Docket No. 31], 9-10). In Winn, as part of an investigation into a report that a man had used his cell phone to photograph or videotape underage girls without their permission at a public pool, Nathaniel Winn consented to police seizure of his cell phone. 79 F. Supp. 3d at 909-10. An officer later applied for a warrant to search the cell phone for

> any or all files contained on said cell phone and its SIM Card or SD Card to include but not limited to the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files on phone, SIM Card, or SD Card, or any data contained in the cell phone, SIM Card or SD Card to include deleted space.

8

Id. at 911.

A Circuit Judge signed the search warrant, and the search of the cell phone revealed pornographic images of children. Id. After Winn was indicted for receipt of visual depictions of minors engaged in sexually explicit conduct, he moved to suppress the evidence obtained from his cell phone for multiple reasons, including that the search warrant was overbroad and lacked sufficient particularity. Id. at 912. Winn argued that the broad scope of the search warrant "essentially invited the police to conduct an illegal general search of his cell phone." Id. On appeal, the United States District Court for the Southern District of Illinois agreed.

Noting that the Seventh Circuit has instructed police officers to narrowly tailor warrants, the Winn court held that "[w]ith regard to the objects of the search, . . . the warrant was facially overbroad, exceeded the probable cause to support it, and was not as particular as the circumstances would allow" because "the police did not have probable cause to believe that *everything* on the phone was evidence of the crime" being investigated. Id. at 919. The court noted that the affidavit contained no basis to believe that data other than photos and videos could possibly be evidence of the crime; therefore, the court concluded, that "the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of [the crime identified in the warrant application]." Id. at 920.

Here, Defendant urges the Court to adopt the reasoning of the Winn court. (Def.'s Mem., [Docket No. 31], 10-12). He asserts that the affidavit showed no relationship between the alleged sexual assault and the cell phone's photo and video files and, therefore, the search of those files was impermissible. (Id. at 11-12). The Court disagrees.

> [A] magistrate reviewing a warrant application is charged with the duty of determining whether a "fair probability that contraband or evidence of a crime will be found in a particular place." [United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008)] (quotation omitted). Indeed, "[i]t is not necessary for an affidavit to include the name of the specific crime alleged." United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007), cert. denied [552 U.S. 1104] (2008). "Rather, only a *probability* of criminal conduct need be shown."

See United States v. Alexander, 574 F.3d 484, 489 (8th Cir. 2009).

"In short, an affidavit supporting a search warrant needs to establish only that the evidence of a crime—*any* crime—will probably be found, not that the evidence of a specific crime will probably be found." United States v. Bailey, Case No. 14-cr-270 (PJS/TNL), 2015 WL 317372, *2 (D. Minn. Jan. 26, 2015). Moreover, as the Government notes, the Eighth Circuit has previously recognized "an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." United States v. Colbert, 605 F.3d 573, 578 (2010). Considering the evidence in the affidavit, which supported the conclusion that Defendant had molested B.C., the state court judge could reasonably have concluded that there was a fair probability that Defendant possessed child pornography on his cell phone.

Upon review of Investigator LaBore's affidavit, the Court finds that the issuing state court judge had a sufficient basis upon which to believe that probable cause existed for the issuance of the search warrant. The affidavit contains information concerning Defendant's alleged sexual assault of B.C. and the subsequent series of incriminating text messages regarding Defendant's behavior. The affidavit articulates a sufficient basis upon which to find that a fair probability existed to conclude that the search would uncover evidence of a crime; thus, there was probable cause to issue the warrant to search Defendant's cell phone.

In addition, assuming solely for the sake of argument that the affidavit was not sufficient to establish probable cause, the Court concludes that officers relied in good faith on the probable cause determination by the state court judge when executing the search warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238-39 (2011) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

United States v. Marion, 238 F.3d 965, 969 (2001). Here, Defendant contends that the latter two circumstances apply. Again, the Court disagrees.

The record currently before the Court shows that law enforcement's good-faith reliance on the warrant issued to search Defendant's cell phone militates against suppressing the evidence obtained during the search. In her affidavit in support of her application for a search warrant, Investigator LaBore presented specific facts indicating that Defendant had sexually assaulted B.C. and that Defendant had subsequently sent incriminating text messages to R.C. and M.C. from that phone. The affidavit related Investigator Sathers' assertion that the data covered by the search warrant could assist in "identifying a specific user of a digital item." And, as discussed above, the Eighth Circuit has recognized the intuitive link between child molestation and child

pornography. Accordingly, the affidavit in support of the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In addition, although the scope of the search was broad, it did not render the warrant "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

Thus, the Court concludes that the officers involved relied in good faith on the search warrant which had been issued by Judge Floerke based on the application for a warrant setting forth those facts.

Because the Court finds that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the search warrant for the contents of Defendant's cell phone, the Court recommends that Defendant's Motion to Suppress Fruits of Unlawful Search and Seizure, [Docket No. 22], be **DENIED** with respect to the search warrant at issue.

## III.    CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress, [Docket No. 22], be **DENIED**.

Dated: September 6, 2016                          ___/s Leo I. Brisbois_____
                                                  The Honorable Leo I. Brisbois
                                                  United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.